All right, we'll begin this morning with the United States v. Gooding and Mr. Leckar. Good morning, Your Honor. Mr. Leckar? Leckar, Your Honor. Thank you for asking. This is one of those exceptionally rare cases. In fact, I think it's probably a case of first impression in this circuit, which on direct appeal, the record conclusively reflects ineffective assistance of counsel. We don't have a case in which, unfortunately, defense counsel said not a word on the record of sentencing, the most crucial phase of any criminal proceeding, other than perhaps the decision whether to plead guilty. We're not talking, Your Honors, about a counsel who did bad advocacy. We're talking about non-representation inertia. Go right to the issue in the case, which is where you are. I'm sorry, Your Honor? Go right to the issue in this case, which is where you are, but you say it's a different because your client, I assume it was your client below? No, no, Your Honor. I was appointed by the court. You wouldn't be saying you're ineffective, I guess, if you were standing there. I would hope not. I would hope that I have enough presence. But, I mean, it's a case in which the prosecutor is rather vigorously asking for a sentence below the guidelines, six to six months, which is way below where, you know, what he could get. And the circumstances of a direct appeal, one of the reasons it's rare, because if this is a direct appeal, it's pretty high bar. That case, this is different because of that fact, but also the other facts that make it somewhat different from the other cases, in addition to the fact, you know, that it is a direct appeal. I mean, why not, couldn't you just wait? No, because the record is conclusive. Cronin, why not? If the government's arguing your case, what better argument could be made than sit back and let the government do it? No, Your Honor. He made the deal, and he got the government to, they dropped counts, and he got the government to make this argument. He could botch it up by standing up and saying something. I mean, there was allocution, the defendant spoke nicely, and the government then did its pitch, and the court bought part of it, not all of it. This guy has a pretty big record, and got a reduction. To say it's conclusive, it seems to me there could be a strategy to sit and let the government make the argument. And I'm suggesting to Your Honor, in response to both questions, that cases such as Miller v. Martin, Petrazzo v. Nelson, United States v. Gonzales, all of the same thing, under Cronin, where you have a non-representation, that's sentencing, where you... Hold it, hold it. We have representation. We have a negotiated plea agreement, and then we have no obligation to ask for 5k1 reduction. The government chooses to do it, and goes down halfway, and is pleased with the man's representation, and is telling the judge about all this. The defense attorney is sitting there, smiling, happy. No. Let me suggest you read the United States v. Gonzales. While we argue this case, and tell me where was the representation conclusively sufficient? Because it was a non-representation. You had an absolutely silent lawyer at sentencing. Silent can be a strategy, can't it? It could be a strategy under one circumstance, Your Honor. I have mulled this over many times. It will be a strategy if, if, the judge said to you right out of the gate, I'm inclined to give you the lowest sentence possible. What happened here on the record is a number of instances where it becomes quite clear that it could not have, silence could not have been strategic. Let's start with the opening of the case. When the defendant stood up there, and the district judge said to him, listen, they're really not putting all those arrests on you, are they? Then you go on a little bit further in the record, and you hear the defense, you hear the district judge throw three rapid-fire questions at the defendant. The janitor and chef of the GED, who responds to the first question, and the judge says, how hard can it be? How hard does it have to be to get an answer out of you? Then you go on to the fact that defense counsel never once suggested to the court what would be a lowest possible sentence that would be consistent with the parsimony clause. None of that was done. He said nothing, nothing about my client's prospect for rehabilitation, and that is in the record. You're not challenging the judge in terms of what the judge did. I'm sorry, Your Honor? You're not making any challenge to the judge himself? No. I'm saying that he is not, the judge is maybe not remiss. And you have enough to do with Judge Boyle down in the Eastern District of North Carolina, aren't you? I actually had an appellate case in which Judge Boyle sat here in this very courtroom 20 years ago. I know Judge Boyle. Anything about his disposition in this case surprises you? I think I'd rather not comment on that. Well, I guess I have to. He can be a little bit crusty, let's put it that way, but the fact of the matter... What is the lawyer to do? I think what the lawyer should have done was stood up and argued on behalf of the client. He knew the client... What did he do? Tell Judge Boyle to shut up and stop being so caustic? No. What he would have said was this. He would have said, Your Honor, let me say first of all that none of these people, none of the comments you're making reflect Dwight Gooding. You're suggesting that in Henderson County you have people sleeping in cars with their baby mamas and homeless along with their parents. That's not Dwight Gooding. He has gainfully employed parents. His father was self-employed. His mother worked at a hospital. He could have said that Dwight Gooding was a GED with a high school education. Dwight Gooding also was not just a really nice guy from that perspective. The judge brought those facts out. I mean, everything you're saying would be nice, but all that would do is just require some deeper digging into his own past. I mean, it's a trial strategy. I'm not saying it shouldn't have been used, but we own direct appeal. I'm suggesting it couldn't possibly be a trial strategy. I'm suggesting to you, reading Miller versus Martin. We're suggesting it might be, and it might even be effective. When the government is pleading your case and that's your adversary, the government is taking you down, your sentence down to half of what you could get and is saying this man helped a lot. He should get 66 months and explains why and so forth. What better? You could muck it up. You get up there and start opposing the government. You could not possibly have mucked it up worse than this defense counsel did, Your Honor. He let the district judge proceed under a misapprehension. For example, that my client went to a high school where it was prone with violence. My client didn't go to that high school at all. The district judge had the pre-sentence report and considered it and noted on the record that he considered it and adopted all the findings of the pre-sentence report that include all the factors that you're talking about, where he went to school, that he was employed, that he was paying child support for his son, all of those factors. The judge did consider that. What the judge didn't say, Your Honor, what he didn't say on the record, for example, because defense counsel didn't urge it, anything about my client in particular said nothing about prospects for rehabilitation, said nothing about why that sentence was consistent with a parsimony clause that would be the most reasonable sentence that would be consistent with a Sentencing Reform Act. Nothing. Miller versus Mark. Sentencing Reform Act, I mean, the guidelines would have required a minimum sentence of 110 months. And this judge went below 110 months, 84 months, and accommodated his cooperation, which trumped the range. All those arguments would bring it down to the range. There was nothing extraordinary that would have prompted the departure downward from what you're arguing on the record. The only reason it gets downward is the government's argument that he should get 66 months. There is one thing that trumps it, Your Honor. The Supreme Court decision in Cronert, there's a presumption of prejudice here. It should be vacated for that ground alone. Except there was a lawyer. There was a lawyer at every stage of the proceeding. The lawyer negotiated this deal. The lawyer got two of his accounts dismissed, got the government to stand up and say when the government didn't need to, to argue for the 66 months, and he kept his mouth shut. Now, that's a lawyer acting. The absence of a lawyer is obviously presumed. But here's a guy that chose to remain silent. He's sitting there at the table right next to the guy, does his allocution. The government then gets up and argues the case for him. Judge Meemeyer, what we have was a mere shadow counsel. I will concede to you there was a lawyer standing alongside Mr. Gooding. But as in Miller v. Martin, there was an almost non-existent presence. There was a shadow as in Patrasso v. Nelson. There was a mere spectator as in Tucker v. Faye. There's a line of cases that follow the Cronert standard. Those direct appeal cases? Were those direct appeal cases? No, Your Honor, but my suggestion is there's no difference here. Fortunately, most of the time, I understand that. And it is conclusive. That's what Cronert tells us. Why wouldn't you wait? I mean, typically in cases like this, if you don't find there is an ineffective system of counsel, it would be simply we don't reach it because the record is insufficient to set it up. You then have a shot at it on a collateral view where the lawyer then can respond and allow for other evidence to come in. Why would we jump in the middle of this thing where at least arguably, and I understand that sort of takes it from the conclusiveness, arguably, you can, as a lawyer, you can figure out a reason why a lawyer sometimes need to shut his mouth. When you think you have won the case, the adage that seems to be rather prevalent is that there's not a good reason for you to keep talking. He has a client who could get up to what it was, 134 months? 137, I think. 137. He has a prosecutor on the other side saying, give this man six to six months, because his testimony and what he's done will lead or has led to the arrest and maybe hopefully the conviction of three others who are involved. And he is such a significant person. Now, he's got a past that's not all that sweet. Judge Boyle knows that. Certainly. But the prosecutor's arguing that. And at this point in time, I don't know what the strategy is of a defense counsel who is sitting at the table and a prosecutor is arguing his case. And if Judge Boyle is going to take on the prosecutor in terms of this, I don't know what more you could do than to sort of call what they call a snitch against gang members. This is what this man has done. That is a significant thing to do in the community, knowing he's getting ready to go into prison. And the prosecutor's arguing, give this man 66 months. And you say the lawyer on the other side should start talking and challenging things the judge is saying when he has the prosecutor. I see that I've eaten heavily into my rebuttal time, but let me respond to that, Your Honor. Again, chronic. But if you have any questions, if you're not, if you are, as I think you should be, troubled by the non-appearance, by the inertness, by the spectator presence of a lawyer at the critical stage of sentencing. Trouble does not mean conclusiveness. If you agree with that, if you take that position, Your Honor, and you are the court of appeal, then what the court should do is do, I'll take the alternative remedy we suggested, is to remand it for evidentiary hearing rather than start all over again. The government didn't contest that remedy. You have in the main case where we have to provide the defendant with a lawyer, we're now going to engage in a hearing to have a dispute between the lawyer and the defendant. I mean, the man has to have a lawyer. And one of the main reasons why we postponed this to post-conviction relief under 2255 is so that the lawyer and the client don't fight in the case in which the lawyer ought to be helping the client. Then what you would do, Judge, would be much... I mean, you're actually taking a posture here that is suggesting that is hurtful for the client in a certain sense, because now you're saying, I didn't do a good job for my client below. Now, personally, it wasn't you, but it's still, it's your office. I didn't do a good job below, let my client off, or give him a new trial or something, while all of that can be handled under 2255. And we've suggested that that's where it should be done. And what I'm suggesting to you is to be efficient here rather than inefficient. I would suggest you have to be troubled by this record. If you are troubled at all by the record, and I think you should be, then the case should be remanded rather than start all over again. Because it's of concern. It's significant to the administration of justice for people to know that lawyers can get up and say absolutely nothing on their client's behalf that's sentencing. And that would be okay in the circuit. I would be stalled if that were the ultimate disposition. Okay. Thank you. You've got some rebuttal left. We'll hear from you then. Ms. Briggs. What role are you going to play now? Your argument on his behalf below. You're going to argue on his behalf today? Yes. Christine Fritz on behalf of the government asking that you affirm the judgment of the district court here. One hallmark of an effective advocate is knowing when to be quiet. Not everybody appreciates that. But a good, experienced attorney is guided by that principle. That's what happened here. This case is an example. What are you going to say to us? I'm going to say that this is an example. Of what we just said right there? Of a defense attorney who did his work ahead of time. And he knew his audience. You're talking about your opening statement to us. What you just said to us. Yes. I just asked a question. That's all. Well, I would like to touch upon the things that defense counsel did right here. I would like to defend his conduct. Within a month, he had secured a very favorable plea agreement. He had maximized the value of his client's cooperation. He secured a significant 5k reduction. So what remedy do you want us to give for that? Are you asking us now to remand? To ask the judge to reconsider? Or to think those things over? Are you asking to for remand? No. Why are you asking us to talk about defendant's conduct? The law does not. Ineffective assistance to counsel. Which we had a nice colloquy with the defendant's counsel. Talked about conclusiveness and things of that nature. You heard it. I did. But you want to advocate for the defendant. I am advocating that the defense attorney was not ineffective. That's what I'm trying to advocate. At best, prosecutor was ineffective. Because he didn't get his point across. That he should be six to six months. No, I would not agree with that statement either. I think Judge Wynn's questions are very pointed. Because what it does, it turns the adversary process on its head. Arguing the way we're arguing here. You arguing that same defense counsel, your adversary, did it right. When you normally would want to uphold and address whether the sentence was correct. Whether the justice was done in this case. The whole difficulty about arguing. Let an attorney and a client air their differences in the main case is just this. Now we have you advocating for the defendant. And you have another lawyer saying, I didn't do a good job below. I mean, doesn't this all sound like a little bit like Alice in Wonderland? And that is why this is typically not taken up on direct appeal. And remand in this case is not an option. The law does not provide for that either. This court conclusively finds that defense counsel was ineffective. And it is remanded for a resentencing. Otherwise, the court affirms. There is no remand for more exploration. What appellate counsel is arguing here is a rule that defense counsel must always speak at a sentencing. And I disagree. Where a defense counsel believes that speaking would work a detriment to his client, it's better to be quiet. Attorneys shouldn't talk just to talk. If appellate counsel had come up and fully advocated the government's position, I would have yielded my time and sat down. This court probably would have expected as much because there was nothing more for me to say. That was the enviable position in which this defense attorney found himself. And if there are no questions of the court, I ask that you affirm the judgment of the district court. Judge Niemeyer, let me tell you what's Alice in Wonderland about this case. What's Alice in Wonderland is that they're standing here saying the defense counsel was an effective advocate when it's sentencing. He was no advocate at all. Judge Thacker, our position is he has a duty. He has a duty to speak. Notwithstanding the fact that the district judge said, I've read the PSR. He also have a duty to speak, to shut up when he thinks it's in the interest of his client to shut up? There could be, yes. And there could be but one circumstance. How are we going to make that determination in this record? It's simple. Two things. Chronic. He says nothing. And secondly, there's one. You conceded with me that a lawyer could, in exercising his best judgment, choose to stay quiet. And I said to you in my brief, and I believe I may have said it earlier in an oral argument, there could be one circumstance when the judge said, I'm inclined to give him below a sentence possible. Do I have to hear from you? Under those circumstances, you might be smart and say, no, Your Honor, you don't. That's fine. In fact, I believe as a lawyer of yours. He did get a sentence below the guidelines, didn't he? The problem is we don't know what he could have gotten if he had an effective advocate there. That's what United States versus Gonzalez talks about, Judge Wynn. Tell me any case that you have. There may be one. Is there any case like this case in which the prosecutor has advocated for sentence below the guidelines that a lawyer has been found to be ineffective on direct appeal? Is there any case like that? I would have to ask you for leave to file a letter of brief. But I would say that there's not a case out there like that. I don't know about you. I'd have to sit back and look at the cases. We hope you would have done that before you got here because that's exactly your case. But in any event, any of the cases that you are citing to us now, any of those cases that you say are so compelling, are those facts present? That you've got a counsel who is silent in the face of a prosecutor who is advocating a sentence well below, not just below, well below the guidelines. The only case that I had that was not- On direct appeal. As I said to you, there's no case that I could find on direct appeal anywhere, but- And now you know why. And I'm suggesting to you this, Judge Wynn. I'm suggesting to you it doesn't make a difference. It doesn't make a difference for this. Yes, it doesn't make a difference because unless you had a circumstance where a judge said, I'm inclined to give him the lowest possible sentence, a counsel has a duty to speak on his client's behalf. He had a duty, Your Honor, to disabuse Judge Boyle. Let me ask you this. I just want to ask you this. I'm troubled by the way this seems to be going. You're on direct appeal. You're saying I, as this defendant, as this Mr. Gooding's lawyer, acted terribly so that we ought to get a remand. This is basically what you're saying. You just happen to be a different lawyer, but on direct appeal, you are Mr. Gooding's lawyer. And you're basically telling us from your position as his lawyer, I really messed up below and you should remand. Isn't that what you're saying? When I listened to the U.S. attorney argue for me and didn't say anything, I really messed up. And on direct appeal, you want us to remand. I'm in an uncomfortable position, Your Honor, except that I must say this to you. I've practiced law for 40 years. I have raised ineffective assistance of counsel on direct appeal in the D.C. Circuit three times. But my point is this. I don't like making accusations about fellow counsel. I am saying to you. Yourself, you're in the role of his lawyer. It just happened to be switching, but it just as well could be his lawyer is up here. We don't throw lawyers out in the case while they're representing them. And you're sitting there saying I screwed up and you should send it down. I am, sir. But not only that, you're saying I screwed up for listening to the U.S. attorney who was advocating on behalf of my client. I am saying that to you, Judge Meemaw. I'm saying to you that the United States v. Koenig tells you there's a presumption of prejudice here. And this, and particularly. You're just over reading that and over applying that because that's assumption that counsel didn't make a judgment. Your Honor. And we don't know if counsel made a judgment. How could counsel have not have had a duty, not have had a duty to speak up? How could he not have had a duty to speak up when Judge Boyle said to him, well, baby mama sleeping homeless in the cars. He wasn't sleeping with his baby mama in the car. So you think that would have got him a lower sentence, right? We don't know, Your Honor. And that's what Koenig talks about. In the direct case. And you are the one who refused to say he was not sleeping in cars. He was a much more abiding citizen. You know what Judge Boyle would have said? This guy's got a record an arm long. And this guy has gotten into trouble throughout his life. And you know what he should have said about that record? He had felonies early on. Then they were misdemeanors. That yes, I'm not suggesting to you that he was an ideal citizen. But what I am suggesting to you is that he had a duty to speak. And if you feel ultimately that you can't take it on direct appeal, but it can't be conclusively resolved, that what makes sense here is to remand it for an evidentiary hearing under the Strickland standard. In the direct case? Yes. So you're going to have a lawyer and a client testifying against each other in their own case? So be it. Have you ever seen that in a case? Ever? Yeah, I think in, well, some of the habeas cases, Your Honor, if a lawyer's had a speech. Of course. Habeas is post-trial. But here we have a client and attorney in a relationship that is very, very important to this system of justice. And you're saying in the direct case, we're going to now have a hearing as to a spat where the lawyer on appeal says, I screwed up. I want now to go back and tell you why I screwed up and have a hearing on it. When the attorney basically listened to favorable testimony from the government. I, this is my Alice in Wonderland comment. The idea is the adversary system loses its direction in that kind of context. And that's why we have 2255. Judge, the adversary system contemplates counsel being there advocating. That didn't happen here. You know it didn't. He said nothing. And the fact of the matter is, it's not the client that needs to speak here. It is an honoree man. It's the lawyer. The lawyer has to explain why he didn't get up and why he didn't disabuse Judge Borrello of those misapprehensions about my clients. In the very same trial in which guy's being adjudicated guilty and being sentenced. We're not questioning his guilty plea. Yes, it can do it. One would have to do it. One would have to see was he ineffective for purposes of that sentence. In that kind of hearing in a case in the direct prosecution of a client. During the course of the prosecution, you now have a hearing where the attorney says, I screwed up and I want to have a new sentence. I have not, Your Honor. But that's what would be efficient here rather than start all over again. I want to recognize your representation. It's a strong representation on behalf of your client. You were court appointed in this case and we put you in a little bit of an awkward position. But you advocated well and we recognize it. We'll come down and greet counsel and proceed on the next case.
judges: Paul V. Niemeyer, James A. Wynn, Jr., Stephanie D. Thacker